RICHARD A. OTTO, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 22360. Promulgated May 9, 1930.

*James Walton, Esq.,* for the petitioner.
*James L. Backstrom, Esq.,* for the respondent.

OPINION.

SMITH: The only question for our determination in this proceeding is the amount of taxable gain derived by the petitioner in 1924 from the sale of 121 shares of stock in the Harmony Creamery Co. at $500 per share. The petitioner raises no question as to the correctness of the determination of the respondent with respect to the profit realized upon the sale of 12 shares of stock in 1924 at $500 per share. The basis agreed to by the petitioner is the March 1, 1913, value of the stock, namely, $163.02 per share. The parties are in dispute only as to the proper basis to be used in computing the amount of the gain upon the sale of the 121 shares. The respondent has computed the gain upon the basis of a March 1, 1913, value of $163.02 per share, while the petitioner contends that the proper basis is the value of the shares at the date of the death of his father in February, 1923, which he contends was $500 per share.

It is the respondent's contention that the shares of stock in question were acquired by the petitioner as a gift from his father in 1921 and that the basis for determining petitioner's gain is the same as it would be in the hands of the donor under the provisions of section 204 (a) (2) of the Revenue Act of 1924. Petitioner contends, on the other hand, that he acquired the shares of stock in question upon the death of his father on February 20, 1923, as a result of a testamentary trust executed by his father on January 6, 1921, which testamentary trust was intended to take effect and did take effect upon the death of his father; that the fair market value of each share of stock at February 20, 1923, was $500 per share; and that his gain upon the sale should be computed upon the basis of the value of the stock on that date in accordance with the provisions of section 204 (a) (5) of the Revenue Act of 1924.

The pertinent parts of the statute read as follows:

(a) The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except that—

\*　　　\*　　　·　\*　　　\*　　　\*　　　\*　　　\*

(2) If the property was acquired by gift after December 31, 1920, the basis shall be the same as it would be in the hands of the donor or the last preceding owner by whom it was not acquired by gift. \* \* \*

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(5) If the property was acquired by bequest, devise, or inheritance, the basis shall be the fair market value of such property at the time of such acquisition. \* \* \*

With respect to the respondent's contention that the 121 shares of stock received by the petitioner in 1923 were acquired as a result of a gift to him of the shares on January 6, 1921, it is to be noted that the instrument as of that date recites that "the party of the first part [petitioner's father] has this day assigned, transferred and set over all of his stock in the Harmony Creamery Company \* \* \* unto the parties of the second part," upon certain terms and conditions thereafter named, among which is the following:

SECOND. As part consideration thereof, the said parties of the second part guarantee unto the party of the first part that said corporation will award an annual salary of Twelve Thousand ($12,000.00) Dollars unto the party of the first part during the balance of his natural life. Upon the death of the party of the first part, the parties of the second part agree to contribute towards the support of their mother, Leah Ziegler Otto, a monthly sum of Two Hundred Fifty ($250.00) Dollars, so long as she lives.

This instrument imports that the petitioner was to acquire his stock for a consideration. Under the terms of the instrument of January 6, 1921, petitioner was not to acquire his stock until the death of his mother. But by a supplemental agreement executed on the part of his mother on January 24, 1921, the petitioner was privileged to receive the shares of stock coming to him upon his personal undertaking to pay his proportionate part of the amount to be contributed to the support of his mother during her lifetime. This supplemental agreement does not, however, change the fact that the petitioner was to receive his shares of stock for a consideration. In view of this fact we are of the opinion that the petitioner's father did not make a gift to the petitioner of the 121 shares of stock in 1921, for "a gift is a gratuity, and not only does not require a consideration, but there can be none; if there is a consideration for the transaction it is not a gift." 28 C. J. 620. See also *Forsyth* v. *Reynolds*, 15 How. 357.

We are furthermore of the opinion that the instrument of January 6, 1921, executed by the petitioner's father was not a testamen-

tary trust which was intended to take effect and which did take effect upon the death of the petitioner's father. It was unquestionably the intention of the petitioner's father to part with his title to the shares of stock under the agreement entered into. The shares of stock were turned over to an escrow agent, the South Side Trust Co. of Pittsburgh, Pa., to be held by it until the petitioner made the payments required to be made under the contract. In our opinion the transaction amounted to a sale of the shares of stock by petitioner's father for a consideration, the consideration being that the corporation should pay a salary of at least $12,000 a year to the petitioner's father, B. F. Otto, during his lifetime, and that thereafter certain payments should be made to the petitioner's mother during her lifetime.

The facts in this case are substantially similar to those which obtained in *John W. Scott*, 9 B. T. A. 955 (C. C. A.), 29 Fed. (2d) 472. There the petitioner's father conveyed to John W. Scott an interest in the partnership of Carson, Pirie, Scott & Co. and under the agreement of conveyance John W. Scott was required to pay a portion of the profits received by him to his father during life and thereafter certain amounts to his mother during her life. The Board held that annual payment to Scott's mother in 1921 and 1922, were not deductible from gross income, but constituted a part of the purchase price of the property conveyed. This view was sustained by the Circuit Court of Appeals for the Seventh Circuit, *Scott* v. *Commissioner*, 29 Fed. (2d) 479.

Similarly, in this case it must be held that B. F. Otto sold his shares of stock in 1921 for a consideration. The fact that the consideration was not fully paid or satisfied until the death of B. F. Otto does not change the fact that the sale of the shares was in 1921.

The record of this action does not afford a basis for determining the cost of the 121 shares of Harmony Creamery stock to the petitioner. The respondent has used a basis of $163.02 per share. We can not say that the cost per share was in excess of that amount.

But even if it be considered that the basis for the computation of the gain was the fair market value of the shares of stock on February 20, 1923, we think that the evidence falls far short of proving a value of $500 per share on that date. It is the petitioner's contention that the business of the Harmony Creamery Co. began to go to pieces shortly after the death of his father and that since the 121 shares of stock were sold for $500 per share in 1924, they must of necessity have been worth more in 1923, at the time the petitioner actually received them from the escrow agent. In his argument counsel for the petitioner was asked:

Might not they [petitioner's brothers] have paid an amount for that stock of $500 a share, very much in excess of the value at the time acquired?

Counsel for the petitioner replied:

Yes, but they would have paid the same amount at the time of the father's death to get control, any value. He was in a position to get an unreasonable price. I admit $500 is unreasonable, but he would have gotten that at the time of his father's death. They immediately diverted a quarter of a million dollars from the corporation.

Upon the record the determination of the Commissioner as to the profit realized upon the sale of the 121 shares of the stock in question is sustained.

*Judgment will be entered for the respondent.*